UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMERICAN SPECIALTY LAB, LLC,

        Plaintiff,

    v.

GENTECH SCIENTIFIC, INC.,

        Defendant.

**DECISION AND ORDER**

17-CV-1187S

## I.  INTRODUCTION

In this action, Plaintiff American Specialty Lab, LLC ("ASL") asserts claims against GenTech Scientific, Inc. ("GenTech") for breach of contract and breach of the implied covenant of good faith and fair dealing. Before this Court is GenTech's motion to dismiss ASL's complaint, on statute of limitations grounds, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 4, 10.) For the following reasons, GenTech's motion is granted.

## II.  BACKGROUND

This Court assumes the truth of the following factual allegations contained in ASL's complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997). This Court also considers the purchase order between the parties, the terms and conditions incorporated into the purchase order, and the work order completed upon delivery.[1]

---

[1] In determining whether dismissal is warranted, a court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information

1

ASL "conducts a lab business" evaluating and analyzing "herbs as well as other biological issues." (Complaint, Docket No. 1, ¶ 5.) GenTech sells refurbished analytical instruments. (See id., ¶¶ 6-7.)

On September 4, 2015, the parties entered into an agreement for the sale of three pieces of equipment at a price of $75,000. (Purchase Order, Docket No. 27-6 at p. 1.) This agreement was memorialized on a paper purchase order. [2] The purchase order was filled out in pen, and ASL's owner and manager, Azam Hakim, signed it and wrote in an additional term. (Id.)

Printed next to the signature line on the purchase order is the following text, in a font slightly smaller than the font used for other items:

> This order for equipment, parts, or services is expressly limited to acceptance of GenTech's General Sales Terms and Conditions. (available at http://gentechscientific.com/content/tt-sales-terms-and-conditions). Any different or additional terms are expressly rejected by GenTech unless agreed to in writing.

(Docket No. 27-6 at p. 1.)

Item 34 of the Terms and Conditions is a "limitation on action," stating that any action must be brought within one year from the date of delivery of the equipment, or from

---

contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, …, and [4] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Healthnow New York Inc. v. Catholic Health Sys., Inc., No. 14-CV-986S, 2015 WL 5673123, at *2–3 (W.D.N.Y. Sept. 25, 2015) (Skretny, J.) (citing In re Merrill Lynch & Co., Inc., 273 F.Supp.2d 351, 356–357 (S.D.N.Y.2003) (footnotes omitted), aff'd 396 F.3d 161 (2d Cir.2005), cert denied, 546 U.S. 935, 126 S. Ct. 421, 163 L. Ed. 2d 321 (2005)).

[2] Although ASL did not attach the purchase order to its complaint, it relies on the existence of a contract between the parties, and cites elements of the purchase order. Because it is integral to the complaint, Healthnow, 2015 WL 5673123, at *2-3, this Court will consider the purchase order in assessing GenTech's motion to dismiss.

the date any alleged claim accrued, whichever is earlier.[3] (Docket No. 27-8, p. 3.)

The equipment was delivered and installed by November 12, 2015. (Work Order, Docket No. 27-2 at p. 2.) The equipment never worked according to ASL's specifications. (Complaint, ¶ 15.) ASL and GenTech exchanged numerous emails, and GenTech sent out technicians to attempt to fix the equipment. (Id., ¶¶ 20, 22.)  ASL bought two new computers to help the equipment function, but this did not improve the situation. (Id., ¶ 20.) ASL lost money while its employees sat idle, waiting for the equipment to work. (Id., ¶ 24.) ASL lost business and incurred expenses because of the equipment's failure to function. (Id., ¶¶ 28-30.)

GenTech offered ASL a partial refund of $32,150, but refused to refund the entire $75,000 ASL had paid. (Id., ¶ 25.)

ASL brought an action against GenTech in the District of Nevada on May 1, 2017, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Docket No. 1.) On June 23, 2017, GenTech filed two motions to dismiss: one for untimeliness, pursuant to Rule 12 (b)(6), and one for improper venue, pursuant to Rule 12 (b)(3), or, in the alternative, to transfer venue based on the forum-selection clause in the Terms and Conditions. (Docket Nos. 8, 10.) On November 16, 2017, the District of Nevada held that the forum-selection clause was enforceable and directed its Clerk of Court to transfer this action to the Western District of New York. (Docket No. 18.) The District of Nevada declined to address the timeliness issue. (Id.)

On January 25, 2018, now in the Western District of New York, ASL requested a

---

[3] This Court considers the Terms and Conditions to be incorporated by reference into the purchase order. See infra, pp. 6-9.

3

Clerk's entry of default. (Docket No. 22.) This Court denied that motion as moot and directed the parties to inform the Court how they intended to proceed. (Docket No. 24.) In a text order dated May 16, 2018, this Court found that, pursuant to the terms and conditions of the parties' agreement, New York law governed the parties' contract, denied without prejudice GenTech's motion to dismiss under Nevada law, and gave leave for GenTech to move to dismiss under New York law, or otherwise respond to the complaint. (Docket No. 26.) On June 15, 2018, GenTech filed the instant motion to dismiss (Docket No. 27), which ASL opposes. (Docket No. 28.)

## III.  DISCUSSION

ASL seeks damages from GenTech stemming from the failure of its equipment to function as promised, in breach of the contract between the parties and in breach of the implied covenant of good faith and fair dealing.

GenTech moves to dismiss ASL's claims as untimely, pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, because ASL brought its action after the running of the one-year reduced statute of limitations specified in the terms and conditions of the parties' agreement.

## A.    Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

4

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id.; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the

5

presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away.  See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Deswal v. U.S. Nat. Ass'n, 603 F. App'x 22, 23–24 (2d Cir. 2015); Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n. 12 (2d Cir. 2014) (citing Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)); see also 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1226 (3d ed. 2004) ("[T]he current trend in the cases is to allow [the statute of limitations defense] to be raised by a motion to dismiss under Rule 12(b)(6) when the defect appears on the face of the complaint.").

## B.    The shortened statute of limitations in the terms and conditions is valid and enforceable

GenTech argues that dismissal is warranted because the purchase order incorporates terms and conditions specifying a one-year statute of limitations, which ran before ASL filed its complaint. (Docket No. 27-1 at p. 3). ASL argues that the shortened statute of limitations is not valid because ASL lacked notice of the terms and conditions and never explicitly agreed to a shortening of the statute of limitations.

As an initial matter, this Court notes that the terms and conditions of the agreement have already been given effect twice in this case. First, the District of Nevada found them

incorporated into the contract between the parties when it enforced the forum-selection clause and transferred the case to this Court. (Docket No. 18.) Additionally, this Court found them incorporated into the contract between the parties when it held that the choice-of-law provision in the terms and conditions was controlling. (Docket No. 26.)

### 1. The terms and conditions are incorporated by reference into the contract between the parties

The face of the purchase order states that the agreement is "expressly limited to acceptance of GenTech's General Sales Terms and Conditions (available at http://gentechscientific.com/content/8-sales-terms-and-conditions)." (Docket No 27-6 at p. 1.) GenTech has attached the terms and conditions to its motion papers. (Docket No. 27-8.) ASL does not dispute that the document GenTech has attached is the document referred to in the purchase order.

Under New York law, "a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) (citing Jones v. Cunard S.S. Co., 238 A.D. 172, 173, 263 N.Y.S. 769, 771 (2d Dep't 1933)). New York "requires that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt." Wendrovsky v. Chase Paymentech, No. 12 CIV. 0704 (AJN), 2012 WL 13042574, at *3 (S.D.N.Y. Oct. 15, 2012) (citing New Moon Shipping Co. Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 31 (2d Cir. 1997). Reference to a website containing terms and conditions can provide proper identification. Wendrovsky, 2012 WL 13042574, at *3 (where a fax cover page contained an internet link and indicated that Plaintiff could visit that website "[t]o access our Terms and Conditions," terms and conditions were held to

Case 1:17-cv-01187-WMS   Document 31   Filed 09/08/20   Page 8 of 14

be incorporated). <u>See also</u> <u>One Beacon Ins. Co. v. Crowley Marine Serv. Inc.</u>, 648 F.3d 258, 267 (5th Cir. 2011) (where a contract stated that it was to be construed "in accordance with the purchase order terms and conditions" to be found on a specified website, those terms and conditions were validly incorporated); <u>Ward v. TheLadders.com, Inc.</u>, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014) (where an additional Terms section merely stated that the website *may* contain other terms and conditions, terms were held not to be incorporated by reference).

Under New York law, "[a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents." <u>Marciano v. DCH Auto Grp.</u>, 14 F. Supp. 3d 322, 330 (S.D.N.Y. 2014) (citing <u>Brandywine Pavers, LLC v. Bombard</u>, 108 A.D.3d 1209, 970 N.Y.S.2d 653, 655 (2013)); <u>Superior Officers Council Health & Welfare Fund v. Empire HealthChoice Assurance, Inc.</u>, 85 A.D.3d 680, 927 N.Y.S.2d 324, 326 (2011) ("[P]arties are presumed to know the contents of the agreements they have signed.").

"The law simply does not protect someone who willingly signs an agreement which references and incorporates other controlling documents which he or she has not seen." <u>Butvin v. DoubleClick, Inc.</u>, No. 99 Civ. 4027, 2001 U.S. Dist. LEXIS 2318, at *16 (S.D.N.Y. Mar. 7, 2001). "[W]hen a party to a written contract accepts it he is bound by the stipulations and conditions expressed in it whether he reads them or not. … He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them." <u>Level Exp. Corp. v. Wolz, Aiken & Co.</u>, 305 N.Y. 82, 87, 111 N.E.2d 218,

8

221 (1953).

Here, the purchase order contains a reference to a specific website where the terms and conditions can be found. This makes the terms and conditions "identifiable beyond all reasonable doubt," and validly incorporates them by reference. In signing the purchase order, therefore, ASL was bound by the terms and conditions incorporated into it.

### 2. The contract between the parties is not a "browsewrap" agreement

The parties do not dispute that the purchase order controls the agreement between them. Neither do the parties dispute that the terms and conditions submitted by GenTech with its motion to dismiss are those described on the purchase order.

ASL argues, rather, that the terms and conditions were somehow hidden from its view. It refers to the web address where the terms and conditions were located as a "hyperlink" that was too small, or located too far from where ASL accepted the contract, to be seen. ASL argues, thus, that it lacked notice of the terms and conditions.

ASL develops its notice argument by likening the purchase order to a "browsewrap" agreement and urges this Court to adopt a "browsewrap" analysis of this case. This Court declines to do so, because the "browsewrap" argument does not apply to the contract at issue here.

"Browsewrap" is a term referring to contracts formed on websites. "[B]rowsewrap" agreements involve terms and conditions accessible through a hyperlink,[4] commonly at

---

[4] A hyperlink is "a piece of text in a hypertext document which, when selected or clicked onscreen, causes another related object (esp. a file or program) to be displayed or activated." Oxford English Dictionary, https://www.oed.com/view/Entry/248741?rskey=0GJMIV&result=1&isAdvanced=false#eid, accessed 8/27/2020.

the bottom of the screen, and do not request an express manifestation of assent. <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 233 (2d Cir. 2016).

An offeree in an online contract will not be bound by terms and conditions of an internet contract, unless he has either actual notice of certain contract terms, or "if he is on inquiry notice of them and "assents to them through conduct that a reasonable person would understand to constitute assent." <u>Starke v. SquareTrade, Inc.</u>, 913 F.3d 279, 289 (2d Cir. 2019).

Courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put her on inquiry notice of such terms." <u>Id.</u>, 289–90 (citing <u>Nguyen v. Barnes & Noble Inc.</u>, 763 F.3d 1171, 1177 (9th Cir. 2014) ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the [ ] agreement."). A website user can be deemed to be on inquiry notice of contract terms if the "design and content" of the webpage renders the existence of those terms "reasonably conspicuous." <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 233–34 (2d Cir. 2016).

ASL appears to argue that the web address printed on the purchase order, which it mistakenly refers to as a "hyperlink," was not reasonably conspicuous and that it therefore lacked notice of the additional terms and conditions contained there. (Docket No. 28.) It argues that the "hyperlink" leading to the terms and conditions was "hidden in the Customer Purchase Order," that the reference to the website containing the terms and conditions was "located in a very inconspicuous place with a smaller font which is not even readily readable," that the terms were "placed far below, separate and apart, from

10

the main handwritten Order inconspicuously," and that "these almost invisible hyperlinked website material clauses required Plaintiff to go to the website." (Docket No. 28 at pp. 9, 4, 5.)

ASL's argument fails. The purchase order is not a website, but a paper form that ASL's owner signed in ink. The terms and conditions were not accessible by a "hyperlink," because there are no hyperlinks on paper contracts. Rather, the purchase order conspicuously directed ASL to access the applicable terms and conditions at the website listed. This is a valid form of incorporation by reference and binding on ASL. The reference to the terms and conditions, and the web address where they could be found, were located directly next to the signature line on the purchase order. Consequently, as a matter of law, ASL is deemed to have read those terms and conditions and assented to them when it executed the purchase order.

### 3.  The one-year statute of limitations is enforceable

Under New York law, "an agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable." Exec. Plaza, LLC v. Peerless Ins. Co., 22 N.Y.3d 511, 518 (2014) (internal quotation marks and citation omitted). The New York Court of Appeals has "enforced contractual limitation periods of one year." Id. See also N.Y. U.C.C. § 2–725(1) ("By ... agreement the parties may reduce the period of limitation [for a breach of contract action] to not less than one year.").

"[U]nder New York law '[f]ailure to comply with a contractual limitations period will subject the action to dismissal, absent proof that the limitations provision was obtained through fraud, duress, or other wrongdoing.'" CingleVue Int'l Pty, Ltd. v. eXo Platform NA,

LLC, No. 1:13-CV-818 GLS/RFT, 2014 WL 3400856, at *3 (N.D.N.Y. July 10, 2014); see also Infectious Disease Solutions, P.C. v. Synamed, LLC, No. 07–CV–5423, 2012 WL 1106847, at *9 (E.D.N.Y. Mar. 30, 2012); Kozemko v. Griffith Oil Co., Inc., 256 A.D.2d 1199, 1200 (4th Dep't 1998) (upholding a shorter limitations period provided by parties' contract because plaintiffs "failed to demonstrate any fraud, duress or misrepresentation regarding the agreement to shorten the period of limitations").

Here, the one-year statute of limitations provided in the Terms and Conditions is reasonable under New York law. And ASL does not allege fraud, duress, or misrepresentation, as would be needed to defeat the shortened statute of limitations. The statute of limitations is therefore enforceable.

### 4. This Court will not consider material submitted in support of the parties' papers

GenTech attaches the declaration of Clair Bragg, president of GenTech, to its motion to dismiss. (Docket No. 27-5.) In his declaration, Bragg asserts that the purchase order, work orders, and terms and conditions attached are true and correct copies, except that paragraph 7 of the terms and conditions was amended in December 2016. ASL argues that this declaration shows that the entire agreement between the parties is illusory, because one party was able to amend its terms. (Docket No. 28 at pp. 6, 19.)

ASL attaches an affidavit from its president, Azam Hakim, to its response to GenTech's motion to dismiss. (Docket No. 28-1.) In his affidavit, Hakim alleges that he failed to see the mention of the terms and conditions due to his limited knowledge of English, his poor eyesight, and his minimal computer literacy. (Id. at p. 1-2.) GenTech responds by arguing that failure to understand English or have a contract explained does not excuse a party who has entered into it.

12

This Court will not consider either of these documents, or the arguments related to them. When a party submits additional evidence to the Court in connection with a motion to dismiss, the Court must either convert the motion to dismiss into a motion for summary judgment or exclude the extraneous documents from consideration. See Fed. R. Civ. P. 12 (b); Fonte v. Board of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). In assessing GenTech's motion to dismiss, this Court declines to convert it into a motion for summary judgment, and declines to consider any extraneous documents submitted by the parties.

**C.    Dismissal is proper because ASL did not timely file its action**

Because ASL signed the purchase order, it was bound to the terms and conditions incorporated by reference. The one-year statute of limitations specified in the terms and conditions is enforceable under New York law. ASL received the equipment from GenTech on November 12, 2015, and quickly learned that it did not work according to its specifications. (Docket No. 27-7 at p. 2, Complaint, ¶ 15.) ASL filed its action on May 21, 2017, more than one year after the delivery of the equipment and the accrual of its claims. ASL's complaint is thus untimely and must be dismissed.

## IV.  CONCLUSION

For the reasons stated above, GenTech's motion to dismiss is granted, because ASL did not bring its action within the one-year statute of limitations provided in the contract between the parties.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 27) is

GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       September  8, 2020
             Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge